IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JOSEPHINE GUZMAN and TIFFINY ROBERSON, individually and as representatives of a class of those similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>DIAMOND CANDLES, LLC,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)　　1:15cv422<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

THOMAS D. SCHROEDER, District Judge.

　　This is a putative class action involving claims of unfair and deceptive conduct. Before the court is the motion to dismiss the amended complaint by Defendant Diamond Candles, LLC ("Diamond") (Doc. 43) and the motion of Plaintiff Josephine Guzman for interim discovery (Doc. 12).[1] For the reasons set forth below, the motion to dismiss will be granted as it relates to Guzman's claims and deferred with instructions for further briefing as it relates to Plaintiff Tiffiny Roberson's claims. Guzman's motion for interim discovery will be denied.

I.　**BACKGROUND**

　　The amended complaint alleges the following facts, which the

---

[1] Guzman's motion for class certification (Doc. 15) has been deferred by an earlier order (Doc. 24) pending the resolution of Diamond's motion to dismiss.

court accepts as true and construes in the light most favorable to Plaintiffs for purposes of the present motions:

Diamond is a candle manufacturer headquartered in Durham, North Carolina. (Doc. 42 ¶ 12.) It sells its products exclusively through its website. (Id. ¶ 9.) Inside every candle is a ring worth approximately $10 and a code the purchaser can enter on Diamond's website to discover whether she has won an additional ring worth up to $5,000. A previous version of the promotion hid the more valuable ring in the candle itself. (Id. ¶¶ 25-30.)

Guzman is a resident of Congers, New York. (Id. ¶ 10.) In 2015, she purchased a candle through Diamond's website. (Id. ¶ 57.) But for the Ring Reveal promotion, Guzman would not have made the purchase. (Id. ¶ 59.)

Roberson is a resident of Henderson, North Carolina. (Id. ¶ 11.) She purchased candles from Diamond's website on February 12, 2014, and August 19, 2015. (Id. ¶¶ 60, 62.) But for the Ring Reveal promotion, she, too, would not have purchased candles from Diamond. (Id. ¶ 64.)

Plaintiffs bring claims against Diamond for unjust enrichment and violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, et seq. (Doc. 42 ¶¶ 75-100.) They contend that the Ring Reveal promotion is an illegal lottery. Initially, Guzman was the only named Plaintiff, and Diamond moved to dismiss the action on the grounds that the

2

promotion is not an illegal lottery and that Guzman's claims are not cognizable under North Carolina law. (Doc. 10.) In response, Guzman moved for immediate discovery (Doc. 12) and for leave to amend the complaint to add a North Carolina plaintiff (Doc. 34). The court held oral argument on the motions on March 23, 2016, and, as a consequence, granted leave to amend the complaint. (Doc. 40.) Plaintiffs filed an amended complaint naming Roberson as an additional Plaintiff (Doc. 42), to which Diamond responded with a new motion to dismiss for failure to state a claim (Doc. 43). The dismissal and discovery motions are now fully briefed and ready for resolution.

**II. ANALYSIS**

    **A. Guzman's Claims**

Guzman is a resident of New York, yet she frames her claim solely under North Carolina law. Diamond argues that only New York law could apply to her claim. Before reaching the merits of Diamond's motion to dismiss, therefore, the court must determine which body of law a North Carolina court would apply to Guzman's claims. In doing so, the court applies the forum State's choice of law rules. New England Leather Co. v. Feuer Leather Corp., 942 F.2d 253, 255 (4th Cir. 1991).

Claims under North Carolina's UDTPA are "neither wholly tortious nor wholly contractual in nature." Bernard v. Cent. Carolina Truck Sales, Inc., 68 N.C. App. 228, 230, 314 S.E.2d 582,

3

584 (1984) (quoting Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704, 322 N.E.2d 768, 779 (1975)).  There is thus a split of authority among North Carolina courts as to the proper choice of law rule to apply to UDTPA claims.  Stetser v. TAP Pharm. Prods., Inc., 165 N.C. App. 1, 15, 598 S.E.2d 570, 580 (2004); New England Leather Co., 942 F.2d at 255.  At least one panel of the North Carolina Court of Appeals followed the traditional lex loci rule, holding that "the law of the state where the injuries are sustained should govern" UDTPA claims.  See Stetser, 165 N.C. App. at 15, 598 S.E.2d at 580 (quoting United Va. Bank v. Air-Lift Assocs., Inc., 79 N.C. App. 315, 321, 339 S.E.2d 90, 93 (1986)).  Another panel of that same court held much earlier that "the law of the state having the most significant relationship to the occurrence giving rise to the action" should apply.  Id. (quoting Andrew Jackson Sales v. Bi-Lo Stores, Inc., 68 N.C. App. 222, 225, 314 S.E.2d 797, 799 (1984)).  The North Carolina Supreme Court has not resolved this split of authority.[2]  Id.

---

[2] At the March 23, 2016 hearing, Guzman and Roberson acknowledged that North Carolina courts have applied different choice of law tests to UDTPA claims.  Diamond argues, however, that the North Carolina Supreme Court, Court of Appeals, and Business Court all applied the lex loci test in their most recent cases on this issue. (See Doc. 28 at 4 (citing Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 853–54 (1988); United Va. Bank, 79 N.C. App. at 321, 339 S.E.2d at 94 (applying the "law of the State where the last act occurred giving rise to defendants' injury"); Synovus Bank v. Parks, No. 10 CVS 5819, 2013 WL 3965424, at *5 (N.C. Super. Ct. July 30, 2012) (applying the lex loci test to allegations of unfair and deceptive trade practices)).)  Guzman, by contrast, argues that the appropriate test depends on the facts of each

In the present context, federal courts appear to favor the lex loci rule over the substantial relationship test. United Dominion Indus., Inc. v. Overhead Door Corp., 762 F. Supp. 126, 129 (W.D.N.C. 1991) (concluding "that a North Carolina court would apply the lex loci test" to a UDTPA claim). Federal courts apply the most significant relationship test where the lex loci test fails to yield a clear answer. Edmondson v. Am. Motorcycle Ass'n, Inc., No. 99-1299, 2001 WL 91104, at *12 (4th Cir. Feb. 2, 2001) ("We have held that when the place of injury is open to debate in regard to an unfair trade practices claim, North Carolina choice of law rules require a court to apply the law of the state with the most significant relationship to the transaction." (citing New England Leather Co., 942 F.2d at 255)). This court will follow the same approach here.[3]

---

case and that courts apply the most significant relationship test to claims arising outside the personal injury context. (See Doc. 22 at 15 (citing Food Lion, Inc. v. Capital Cities/ABC, Inc., 951 F. Supp. 1224, 1228 (M.D.N.C. 1996) (concluding that since the lex loci test may not always be easy to apply, the most significant relationship test makes sense "in this case")).)

[3] With regard to Guzman's unjust enrichment claim, the parties have not thoroughly addressed the choice of law issue, and the authorities the parties cite conflict. Compare Arabian Am. Oil Co. v. Anderson, No. 88-3574, 1989 WL 37405, at *1 (4th Cir. Apr. 5, 1989) (per curiam) (affirming the trial court's application of the lex loci test to a standalone unjust-enrichment claim under North Carolina law), with Yancey v. Remington Arms Co., LLC, No. 1:12CV477, 2013 WL 5462205, at *3, *12 (M.D.N.C. Sept. 30, 2013) (applying the most significant relationship test to unjust enrichment claims associated with breach of warranty claims on the sale of goods), adopted in relevant part sub nom. Maxwell v. Remington Arms Co. LLC, No. 1:10CV918, 2014 WL 5808795, at *3 n.2 (M.D.N.C. Nov. 7, 2014). Guzman's UDTPA claim provides the only basis

5

In this case, application of the lex loci rule would result in New York law governing Guzman's claims. Under the lex loci rule, the "the state where the injury occurred is considered the situs of the claim." Stetser, 165 N.C. App. at 14, 598 S.E.2d at 580 (quoting Boudreau v. Baughman, 322 N.C. 331, 335, 368 S.E.2d 849, 853–54 (1988)). When the exact location of the injury is not clear, the "location of a plaintiff's residence or place of business may be useful for determining the place of a plaintiff's injury." Harco Nat'l Ins. Co. v. Grant Thornton LLP, 206 N.C. App. 687, 697, 698 S.E.2d 719, 726 (2010). Here, the amended complaint is silent as to the location of Guzman's bank accounts and the computer from which she purchased her candle. Given her New York residence, however, any economic injury most likely occurred there, a point Guzman conceded at the hearing. Therefore, under the lex loci test, New York law governs Guzman's claims.

Application of the most significant relationship test would not alter this conclusion. "[T]here are few North Carolina cases which interpret the meaning of the most significant relationship test," particularly outside the personal injury context. Yancey v. Remington Arms Co., No. 1:12CV477, 2013 WL 5462205, at *3 (M.D.N.C. Sept. 30, 2013) (quoting Dassault Falcon Jet Corp. v.

---

for her unjust enrichment claim; in other words, if Diamond's conduct was not unfair or deceptive, then it is not unjust for Diamond to retain the proceeds of the transaction with Guzman. Accordingly, the court will apply the same choice of law analysis to both the UDTPA and unjust enrichment claims.

Oberflex, Inc., 909 F. Supp. 345, 352 (M.D.N.C. 1995)), adopted in relevant part sub nom. Maxwell v. Remington Arms Co., No. 1:10CV918, 2014 WL 5808795, at *3 n.2 (M.D.N.C. Nov. 7, 2014). Federal courts analyzing North Carolina UDPTA claims under the most significant relationship test have focused on "where the relationship between the parties was created and where it was centered." Jacobs v. Cent. Transp., Inc., 891 F. Supp. 1088, 1111 (E.D.N.C. 1995), rev'd on other grounds, 1996 WL 223688 (4th Cir. May 3, 1996); see also New England Leather Co., 942 F.2d at 256. Here, the parties' relationship took place entirely online and by mail. Guzman ordered her candle online, and it is unclear where the candle was manufactured or stored. Guzman's complaint does not allege that she suffered any injury in North Carolina. As such, this standard is of little help.

When North Carolina courts have applied the most significant relationship test to UDTPA claims, they have engaged in brief, fact-specific inquiries with little reference to other authorities. See, e.g., Andrew Jackson Sales, 68 N.C. App. at 225, 314 S.E.2d at 799; Michael v. Greene, 63 N.C. App. 713, 715, 306 S.E.2d 144, 145 (1983). When North Carolina courts apply the most significant relationship test to other kinds of claims, they engage in fact-specific inquiries and adhere loosely to the Restatement (Second) of Conflict of Laws. See, e.g., Terry v. Pullman Trailmobile, 92 N.C. App. 687, 693, 376 S.E.2d 47, 50

7

(1989).  Factors under the Restatement analysis include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971).  The court's analysis should also be guided by "the relevant policies of the forum" and "the basic policies underlying the particular field of law."  Id. § 6(2).

The first factor essentially replicates the lex loci test and therefore strongly favors New York law.  The second factor favors North Carolina law because the complaint alleges that Diamond's relevant conduct occurred in that State.  (See Doc. 42 ¶ 9 (alleging that Diamond's business model was "conceived and implemented" in North Carolina and that Diamond "operates its enterprise" there); id. ¶ 74 (alleging that Diamond administered its marketing and website, took orders, and sold candles from its headquarters in North Carolina).)  The third and fourth factors appear to be a wash, as Guzman and Diamond are domiciled in different States and their relationship existed solely online, rather than in any physical space.  "[T]he relevant policies of the forum" and "the basic policies underlying" the UDTPA favor applying New York law.  Guzman seeks the benefit of the UDTPA as a consumer protection statute.  Given this context, New York's

8

interest in protecting its own consumers outweighs North Carolina's interest in protecting foreign consumers. See Pilgrim v. Univ. Health Card, LLC, 660 F.3d 943, 946 (6th Cir. 2011) ("No doubt, States have an independent interest in preventing deceptive or fraudulent practices by companies operating within their borders. But the State with the strongest interest in regulating such conduct is the State where the consumers — the residents protected by its consumer-protection laws — are harmed by it." (emphasis in original)).

Guzman nevertheless contends that Diamond should be bound by a disclosure on its website that any dispute related to the website will be governed by North Carolina law. (Doc. 42 ¶ 9.) She argues that this provision supports applying North Carolina law to her claims because all her interactions with Diamond occurred via the website. (See id.) But as the Fourth Circuit has explained, the "nature of the liability allegedly to be imposed by the [UDTPA] statute is ex delicto, not ex contractu." ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 49 n.11 (4th Cir. 1983). Contractual choice of law provisions should be "set aside" where, as here, the dispute does not involve any issue of contractual construction, interpretation, or enforceability. Id. And even if the court were to consider the choice of law provisions on Diamond's website, this factor tends more toward being neutral because the website also states that the Ring Reveal promotion "is subject to the

9

federal law, and laws and regulations of the states where the Contest is run." (Doc. 11-2 at 2.[4])

Applying New York law to Guzman's claims is also consistent with the desire of courts to avoid extraterritorial application of State laws that would implicate constitutional concerns. See, e.g., Carolina Trucks & Equip., Inc. v. Volvo Trucks of N.A., Inc., 492 F.3d 484, 489–90 (4th Cir. 2007) ("By reaching this holding as a matter of statutory construction, we avoid constitutional problems inherent in a broader interpretation of South Carolina law. The principle that state laws may not generally operate extraterritorially is one of constitutional magnitude. One state may not project its legislation into another." (citations and internal quotation marks omitted)); ITCO Corp., 722 F.2d at 48 n.9 (stating that the UDTPA presents "no cause for constitutional concern," but only "[a]bsent some reason to believe that the [statute] is an attempt directly to regulate interstate commerce, and is not an act designed to address primarily local concerns which happens to have an occasional incidental, but not excessive, effect upon interstate commerce"); The 'In' Porters, S.A. v. Hanes Printables, Inc., 663 F. Supp. 494, 502 (M.D.N.C. 1987)

---

[4] Diamond attached a copy of the official rules governing the Ring Reveal promotion to its motion to dismiss, and Guzman does not dispute the authenticity if this document. As a result, the court may consider this document without converting Diamond's motion to dismiss into one for summary judgment. Sec. of State for Def. v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

10

("Application of the [UDTPA] in cases having only an incidental local effect not only would be contrary to the Fourth Circuit's interpretation of the [UDTPA], but also would render the [UDTPA] constitutionally suspect.  The commerce clause mandates that the [UDTPA's] extraterritorial application be justified by local concerns and not be excessively burdensome on interstate commerce.  The court believes that limiting the scope of the [UDTPA] to cases involving substantial effect on a plaintiff's in-state business operation is consistent with, and perhaps required by, the commerce clause.").

Finally, Guzman urges the court to forego ruling on Diamond's motion to dismiss and instead to grant her motion to permit interim discovery.  Such discovery, she contends, will permit her to determine the "connection of the Defendant's business with North Carolina" and the extent to which Diamond offers alternative means of entry into the Ring Reveal promotion for those who do not wish to purchase a candle. (Doc. 13 at 1–2.)  In light of the court's choice of law analysis, however, there is no need for discovery on either of these topics.  As noted above, the court has assumed that all of Diamond's conduct occurred in North Carolina and weighed this factor in Guzman's favor.  Discovery on this issue could not reveal any meaningful information that would alter the outcome of the choice of law analysis.  Guzman's motion for interim discovery (Doc. 12) will therefore be denied.

11

Ordinarily, the choice of law inquiry would not directly result in the dismissal of a plaintiff's claims. Here, however, the amended complaint limits recovery to North Carolina law, and that is the only law the parties have addressed in their briefing. It appears this was strategic, as the lawsuit seeks to certify a national class under the application of North Carolina law. At the hearing on these motions, Guzman agreed that her claims are structured such that if the court were to conclude that North Carolina law did not govern them, the proper course would be to dismiss this action without prejudice. Consequently, having concluded that New York, and not North Carolina, law applies to Guzman's claims, Guzman's claims will be dismissed without prejudice to her ability to file her claim in an appropriate court under the appropriate law.[5]

**B. Roberson's Claims**

The complaint and amended complaint assert this court's subject matter jurisdiction based on the Class Action Fairness Act of 2005 ("CAFA"). (Doc. 1 ¶ 12, Doc. 42 ¶ 13.) CAFA relaxes diversity of citizenship requirements but requires at least one member of the putative class to be diverse from the defendant. See Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 551–52 (2014). This jurisdictional requirement was alleged

---

[5] This conclusion does not prohibit Guzman from pursuing her claim in this court under the appropriate law.

12

and met when Guzman, a New York citizen, was a party. But with her dismissal on the ground that North Carolina's UDTPA cannot be applied extra-territorially, and with the only named Plaintiff being Roberson, a North Carolina resident pursuing only a North Carolina UDTPA claim, a question exists whether the court has subject matter jurisdiction under CAFA or otherwise. Cf. Martinez v. Duke Energy Corp., No. 03-2192, 2005 WL 1009648, at *4 (4th Cir. May 2, 2005) (finding that plaintiffs' addition of a non-diverse defendant in an amended complaint destroyed the requisite complete diversity among the parties).[6] The court foreshadowed this potential issue at the March 23 hearing, yet the parties' briefing does not address it. Nevertheless, before proceeding further the court has an independent duty to satisfy itself that it has subject matter jurisdiction, even when the parties fail to object. Arbaugh v. Y&H Corp., 546 U.S. 500, 501 (2006).

The court will therefore direct the parties to address whether this court has subject matter jurisdiction and, if so, the basis for it. In doing so, the parties should identify which party bears what burdens of proof; whether those burdens have been met (and why); and whether, assuming CAFA applies, the court should (or

---

[6] Unpublished opinions of the Fourth Circuit are not precedential. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

13

must) decline to exercise jurisdiction under 28 U.S.C. §§ 1332(d)(3) or (d)(4).

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Diamond's motion to dismiss (Doc. 43) is GRANTED as to Guzman's claims, which are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Guzman's motion for interim discovery (Doc. 12) is DENIED.

IT IS FURTHER ORDERED that, as to the motion to dismiss the claims of Roberson (Doc. 43), the parties brief the jurisdictional questions raised in this Memorandum Opinion and Order. Roberson shall have 21 days within which to file her brief, Diamond shall have 21 days to respond, and Roberson shall have 14 days to file a reply.

IT IS FURTHER ORDERED that Plaintiff's motion for class certification (Doc. 15) shall remain STAYED pending the resolution of Diamond's motion to dismiss as to Roberson's claim.

    /s/   Thomas D. Schroeder
United States District Judge

September 30, 2016